FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 18, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BETHANY W., | No. 2:23-CV-00183-ACE |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION |
| v. | |
| MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,[1] | **ECF Nos. 10, 14** |
| Defendant. | |

**BEFORE THE COURT** is Plaintiff's Opening Brief and the Commissioner's Brief in response. ECF No. 10, 14. Attorney Chad Hatfield represents Bethany W. (Plaintiff); Special Assistant United States Attorney Thomas E. Chandler represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 3. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion and **DENIES** Plaintiff's Motion.

## JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on June 25, 2020, alleging amended onset of

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the named Defendant.

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

disability since July 18, 2019.[2]  Tr. 23, 110, 278-91.  The applications were denied initially and upon reconsideration and Administrative Law Judge (ALJ) Lori Freund held a hearing on April 21, 2022, Tr. 44-87, and issued an unfavorable decision on September 7, 2022.  Tr. 20-43.  The Appeals Council denied Plaintiff's request for review on April 25, 2023, Tr. 1-8, making the ALJ's decision the Commissioner's final decision for purposes of judicial review, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on June 28, 2023.  ECF No. 1.

## STANDARD OF REVIEW

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  If substantial evidence supports the administrative findings, or

---

[2] Plaintiff amended her alleged onset date at the 2022 hearing and withdrew her Title II claim, as her amended onset date was after her 2012 date last insured.  Tr. 23, 26, 49.

if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the claimant bears the burden of establishing a prima facie case of disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE FINDINGS

On September 7, 2022, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 20-43.

At step one, the ALJ found Plaintiff, who met the insured status requirements of the Social Security Act through September 30, 2012, had not engaged in substantial gainful activity since the amended alleged onset date, July 18, 2019. Tr. 26.

At step two, the ALJ determined Plaintiff had the following severe impairments: carpal tunnel syndrome, right; anemia; gastritis; obesity; fibromyalgia; osteoarthritis of the right hand; major depressive disorder; and panic disorder. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 27.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform light work, with the following limitations:

> [Plaintiff] can lift and/or carry twenty pounds occasionally and ten pounds frequently, and she can stand and/or walk up to six hours in an eight-hour workday. [Plaintiff] can sit at least six hours in an eight-hour workday, but she can never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs, and she can frequently handle and/or feel with the right dominant upper extremity. [Plaintiff] should avoid all exposure to unprotected heights; hazardous machinery; operational control of moving machinery; and excessive vibration. [Plaintiff] should avoid moderate exposure to extreme cold; extreme heat; and humidity/wetness, and she should avoid concentrated exposure to airborne particulates. [Plaintiff] can perform simple and repetitive tasks, and she can have occasional interaction with general public and coworkers. [Plaintiff] can adapt to occasional changes in work setting.

Tr. 30.

At step four, the ALJ found Plaintiff had no past relevant work. Tr. 36.

At step five, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that existed in significant numbers in the national economy, including the jobs of production assembler; accessory assembler; and routing clerk. Tr. 37.

ORDER GRANTING DEFENDANT'S MOTION . . . - 4

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from at any time from the amended alleged onset date through the date of the decision.  *Id*.

### ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title XVI of the Social Security Act.  The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff raises the following issues for review: (1) whether the ALJ properly evaluated the medical opinion evidence; (2) whether the ALJ properly evaluated Plaintiff's symptom complaints; (3) whether the ALJ conducted a proper step-three analysis; and (4) whether the ALJ conducted a proper step-five analysis. ECF No. 10 at 5.

### DISCUSSION

### A.    Medical Opinion Evidence

Plaintiff contends the ALJ erred by improperly evaluating the medical opinion of Joseph Cwik, M.D.  ECF No. 10 at 7-12.

For claims filed on or after March 27, 2017, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative findings include supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors (such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program).  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and the ALJ must explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2). The ALJ may explain how she considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record. *Id.* Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The Ninth Circuit addressed the issue of whether the 2017 regulatory framework displaced the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies. *Id.* at 788-89, 792. The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* at 790, 792. Even under the 2017 regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id.* at 792.

ORDER GRANTING DEFENDANT'S MOTION . . . - 6

*1. Dr. Cwik*

On March 24, 2022, Plaintiff's treating provider Dr. Cwik completed a medical report form and rendered an opinion of Plaintiff's level of functioning. Tr. 748-50. Dr. Cwik noted Plaintiff's diagnoses were fibromyalgia, bilateral carpal tunnel syndrome, and gastritis and that her symptoms included pain with stress and a numb right hand. Tr. 748. Dr. Cwik reported relevant findings and test results included x-rays of Plaintiff's right hand and that she was "numb to dull touch." *Id*. Dr. Cwik indicated Plaintiff did not have to lie down during the day. *Id*. He noted her treatment included bilateral carpal tunnel surgery and medications including omeprazole, dicyclomine, ondansetron, meloxicam, and Tylenol. *Id*. Dr. Cwik opined Plaintiff did not have any physical or mental conditions that were likely to cause pain and that her prognosis was good. *Id*.

Dr. Cwik opined work on a regular and continuous basis would not cause Plaintiff's condition to deteriorate but explained "pain limits her durability for long work periods." *Id*. He opined that if she attempted a 40-hour per week schedule she would likely miss work an average of four days or more of work a month; and he explained "[Plaintiff] said she would because of pain." Tr. 749. Dr. Cwik opined plaintiff was limited to sedentary work with frequent reaching with her right upper extremity; he explained she had a "brace, [and right] hand arthritis." *Id*. He opined that based on the cumulative effect of all limitations Plaintiff would likely be off task and unproductive over 30 percent of the time during a 40-hour work week. *Id*. Dr. Cwik also indicated Plaintiff had been diagnosed with fibromyalgia and explained that a previous PCP had administered a tender point exam; he indicated Plaintiff had at least 11 of 18 tender points. Tr. 750. He opined that the limitations specified in his medical report form had existed since at least September 2012. *Id*.

The ALJ found Dr. Cwik's opinion partially persuasive because it was only supported by some of the objective evidence, Dr. Cwik noted many of his findings

were due to Plaintiff's allegations and not specific objective medical findings, particularly the number of absences per month, and that such absenteeism was not supported within the record by any of Plaintiff's other healthcare providers. Tr. 35. The ALJ found that the opinion was internally supported by the inclusion of findings from the record including right-handed numbness and diagnosis of fibromyalgia. *Id*.

Plaintiff contends the ALJ's failed to adequately consider the consistency or supportability of Dr. Cwik's disabling opinion and erred by misunderstanding Plaintiff's combination of impairments, symptoms, and limitations. ECF No. 10 at 9-10. Defendant contends the ALJ fully complied with the regulations, as she assessed Dr. Cwik's opinion using the factors of consistency and supportability and provided specific reasons for finding it only partially persuasive. ECF No. 14 at 5.

The ALJ found Dr. Cwik's opinion only partially persuasive because it was based, in part, on Plaintiff's subjective reports. *Id*. The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion is. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Here, the ALJ noted Dr. Cwik supported his opinion by including relevant objective findings, including right-handed numbness and previous diagnosis of fibromyalgia. Tr. 35. Dr. Cwik also opined, however, that Plaintiff would not need to lie down during the day, did not have conditions that were reasonably likely to cause pain, her prognosis was good, and that while "pain limits her durability for long work periods," work on a regular and continuous basis would not cause her condition to deteriorate. Tr. 748. While Dr. Cwik opined full time work would likely cause Plaintiff to miss some work, he explained he based his opinion Plaintiff would miss an average of "4 days or more" on Plaintiff's subjective report; he explained "[Plaintiff] said she would [because] of pain." Tr. 749. The ALJ's reasonably concluded Dr. Cwik's opinion was only partially

persuasive because while it was supported by some objective evidence, Dr. Cwik himself explained his opinion as to absenteeism and other limitations was based on Plaintiff's allegations.  The ALJ's findings are reasonable.

The ALJ also found Dr. Cwik's opinion was not consistent with the record. The more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Additionally, "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1228 (9th Cir. 2009).  Here, the ALJ concluded that Dr. Cwik's opinion Plaintiff was limited to sedentary work, would be off task over thirty percent of the workweek and absent an average of four days a week was inconsistent with the record including the records of Plaintiff's care providers.  Tr. 35.  The ALJ noted findings from an exam in January 2021 where Dr. Cwik observed, for example, that Plaintiff's gait was not antalgic.  Tr. 654.  Indeed, review of Dr. Dr. Cwik's physical exam at that visit show the only abnormalities he noted in January 2021 were some skin issues; Dr. Cwik observed otherwise normal findings including that Plaintiff was alert, oriented, appeared comfortable, and her mood and affect were appropriate.  *Id*.

Dr. Cwik's records show he also observed generally normal physical exam findings on the day he completed the medical report form in 2022; he reported Plaintiff appeared comfortable, Tinel's sign was negative bilaterally, and her abdomen was nondistended.  Tr. 724.  Dr. Cwik also explained at that time that Plaintiff "says she has fibromyalgia and chronic right-hand numbness . . . after carpal tunnel surgery bilateral hands," and he noted "she says she cannot lift very much of anything"; he indicated the office visit was for him to complete disability paperwork and that he did so "to the best of my ability."  Tr. 724.  Review of the record shows other providers also noted generally normal findings on physical

exam, and that Plaintiff's symptoms improved with oral iron treatment and dietary changes; her providers acknowledged, however, that she had difficulty tolerating daily oral iron and difficulty with transportation to an infusion center for iron infusions, as well as difficulty with access to a recommended diet secondary to cost. *See, e.g.*, Tr. 453, 528, 546-47, 552, 729. The ALJ reasonably concluded Dr. Cwik's opinion Plaintiff was limited to sedentary work, would be off task over thirty percent of the workweek and absent an average of four days a week was inconsistent with the record, including the records of Plaintiff's health care providers. The ALJ's finding is supported by substantial evidence.

The ALJ also found the opinion of medical expert Dr. Dhiman more persuasive than Dr. Cwik's opinion. Tr. 35. At the 2022 hearing Dr. Dhiman opined Plaintiff had significant limitations but did not meet or equal a listing. Tr. 55. He opined she could occasionally lift and carry 20 pounds and occasionally lift and carry ten pounds; she could perform six hours standing and walking in combination, and could frequently climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. *Id*. He opined she could occasionally stoop, kneel, crouch, and crawl, and could perform frequent manipulation with the right upper extremity; and she should avoid working with unprotected heights, heavy machinery, and vibrations, and could have occasional exposure to extreme heat and extreme cold, wetness, and humidity. *Id*. He explained her chronic fatigue was a symptom, most likely of a combination of both anemia and fibromyalgia, and opined "more likely than not it [is] most likely related to the anemia." Tr. 56.

Dr. Dhiman testified Plaintiff had iron deficiency anemia and the most common cause was related to her monthly cycle. Tr. 56. He opined, "nevertheless, she's probably going to have some residual symptoms of chronic fatigue." Tr. 57. Dr. Dhiman testified it is hard to quantify fatigue, but that more likely than not Plaintiff's was related to a history of heavy monthly cycles and excess bleeding. Tr. 57. Dr. Dhiman noted he could not really opine on mental

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

health issues, and he opined IBS and other gastrointestinal issues were separate from her anemia.  Tr. 57-58.  He opined that while Plaintiff's iron deficiency anemia improved with iron supplementation, "this does not completely fix the problem" and that "when she has a heavy monthly cycle where she has excessive bleeding . . . hemoglobin is going to decrease."  Tr. 58.  He explained that Plaintiff could therefore have fatigue at during certain times during her monthly cycle or for a few days afterward, but that it would likely improve with the iron supplementation.  Tr. 58-59.

The ALJ found Dr. Dhiman's opinion very persuasive because it was consistent with the medical evidence of record, Dr. Dhiman was a specialist of internal medicine and familiar with the rules for Social Security cases, and he reviewed the entire medical record and supported his opinion with evidence of record.  Tr. 35; *see* Tr. 53-59, 703-04.  The more relevant objective evidence and supporting explanations that support a medical opinion, and the more consistent an opinion is with the evidence from other sources, the more persuasive the medical opinion is.  20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  Other factors for evaluating the persuasiveness of medical opinions and prior administrative findings include any specialization of the source and other factors (such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program).  20 C.F.R. §§ 404.1520c(c)(4)-(5), 416.920c(c)(4)-(5).

Here, the ALJ noted Dr. Dhiman supported his opinion with evidence of record, as he explained Plaintiff had been assessed with fibromyalgia with fatigue, right hand osteoarthritis, and carpal tunnel syndrome on the right.  Tr. 35.  The ALJ found Dr. Dhiman's opinion was also consistent with the medical record.  *Id*.  The ALJ noted, for example, that imaging of Plaintiff's right hand showed subluxation at the trapeziometacarpal joint; and records show she was treated with a custom splint.  *Id*. (citing Tr. 642); *see* Tr. 643.  Review of the record also shows

her anemia was under control with iron supplementation and treatment including oral contraceptive pills (OCP) controlled symptoms related to her cycles; she reported she was feeling much better and her periods were normal on pills in July 2019, in July 2020 she reported her cycles were normal and controlled well and she had no new problems, and in 2021 she was noted to be doing well, a physical exam was normal, a pelvic ultrasound was normal, and her symptoms were noted generally controlled on OCP. *See, e.g.*, Tr. 523, 528-29, 714-15. Records from April 2022 show she was still supplementing with iron and had iron infusions without incident. Tr. 751-52.

The ALJ reasonably found Dr. Dhiman's opinion more persuasive than Dr Cwik's because it was consistent with the medical evidence of record, Dr. Dhiman was a specialist of internal medicine and familiar with the rules for Social Security cases, and he reviewed the entire medical record and supported his opinion with evidence of record. Even if the medical opinion evidence could be interpreted more favorably to Plaintiff, if it is susceptible to more than one rational interpretation, the ALJ's ultimate conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Court will only disturb the ALJ's findings if they are not supported by substantial evidence. *Hill v. Astrue*, 698 F.3d 1153, 1158.

The ALJ assessed Dr. Cwik's opinion using the factors required by the regulations and reasonably found the medical expert's opinion more persuasive, and the ALJ's finding that Dr. Cwik's opinion was only partially persuasive is supported by substantial evidence. Plaintiff is not entitled to remand on this issue.

**B.    Plaintiff's Symptom Claims**

Plaintiff contends the ALJ erred by improperly rejecting Plaintiff's symptom testimony. ECF No. 10 at 16-20. It is the province of the ALJ to make determinations regarding a claimant's subjective statements. *Andrews,* 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons.

*Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester* at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.  Tr. 31.

### 1. Objective Evidence

The ALJ discounted Plaintiff's symptom complaints because the objective medical evidence was not fully consistent with Plaintiff's allegations.  Tr. 32.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680.  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Here, the ALJ noted Plaintiff's report she fell and injured her right wrist and her report of difficulty gripping objects in July 2019. Tr. 32 (citing Tr. 437, 440). The ALJ noted Plaintiff had mild tenderness upon exam of her wrist and Tinel's test was positive, but that other testing was negative, and that Plaintiff's right grip strength was "four plus out of five." *Id*. The ALJ noted Plaintiff's history of right de Quervain's release surgery on the right, and that she had previously been assessed with osteoarthritis, gastroenteritis, anxiety, and panic attacks. *Id*. (citing Tr. 438, 441). The ALJ noted nerve conduction study in September 2019 demonstrated right medial nerve compression, and she underwent right carpal tunnel release in November 2019. Tr. 32-33 (citing Tr. 445, 455).

The ALJ also noted Plaintiff's history of chronic fatigue and that she had a prior hemoglobin reading of 7.3. Tr. 32 (citing Tr. 449). Records from 2019 show she required blood transfusion. Tr. 449. The ALJ noted Plaintiff started taking an oral iron supplement in summer of 2019, that her symptoms improved since she started the supplement, and that in October 2019 Plaintiff's hemoglobin was 13.6 and her MCV was 95.2. Tr. 32 (citing Tr. 435, 449, 453). The ALJ noted on physical exam in October 2019 Plaintiff's abdomen was soft and mildly tender with normal bowel sounds and negative for rebound, guarding, hepatomegaly and splenomegaly. *Id*. (citing Tr. 453). The ALJ also noted Plaintiff's mood, affect, behavior, and thought content were all described as normal at that time. *Id*. The ALJ noted during the same month Plaintiff's BMI was 35.11. *Id*. (citing Tr. 468). The ALJ noted Plaintiff had been assessed with right carpal tunnel syndrome, chronic fatigue, arthritis of the right CMC joint, and iron deficiency anemia. Tr. 33 (citing Tr. 606-07).

The ALJ noted Plaintiff was assessed with panic disorder and depressive disorder in June 2020. *Id*. (citing Tr. 459). The ALJ noted upon mental status exam in June 2020, Plaintiff was observed to be cooperative and her speech, thought process, orientation, perception, insight, and judgement were all within

normal limits.  *Id*. (citing Tr. 464-65).  The ALJ noted her fund of knowledge was normal, but she only recalled two of the past three presidents, had difficulty with serial sevens and serial three testing, and difficulty spelling the word "world."  *Id*. (citing Tr. 465).   The ALJ noted upon exam in January 2021, Plaintiff's gait was not antalgic, she moved all extremities equally, and her mood was appropriate.  *Id*. (citing Tr. 654).

The ALJ noted in July 2021 Plaintiff's BMI was 37.6, and at an orthopedic exam that month it was noted she had subluxation of the right first CMC joint, consistent with basilar thumb arthritis, and that she had history of de Quervain's and right carpal tunnel release.  *Id*. (citing Tr. 639-40, 42).  The ALJ noted that in October 2021, Plaintiff's hemoglobin was noted 12.8, her MCV was 92.8, and her ferritin value was 41.  *Id*. (citing Tr. 698, 700).   The ALJ noted in March 2022, Plaintiff's BMI was 38.27, Tinel's signs were negative bilaterally upon physical exam, she appeared comfortable, and her abdomen was not distended.  *Id*. (citing Tr. 724).  The ALJ noted at another appointment in March 2022, the provider explained she had a history of severe anemia in 2019 but that her hemoglobin had improved to 13 since that time with normal iron and ferritin.  *Id*. (citing Tr. 729). The ALJ noted Plaintiff had unspecified diarrhea and abdominal cramping in 2022, and records show diagnosis of IBS.  *Id*. (citing Tr. 736).

Plaintiff contends the ALJ erred by focusing on objective evidence because Plaintiff is primarily limited by fibromyalgia.  ECF No. 10 at 16.  While the mere diagnosis of an impairment is not sufficient to sustain a finding of disability, "[i]n evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods."  *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017).  Fibromyalgia is a disease that eludes objective measurement.  *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).  Review of Plaintiff's record shows little mention of fibromyalgia, however, aside from

Plaintiff's report to providers that she has it and occasional listing of fibromyalgia as a diagnosis; Dr. Cwik, for example, indicated she had fibromyalgia on his medical report form, but he noted that a previous PCP had administered a tender point exam.  Tr. 750.  Dr. Cwik's records from the office visit the date he filled out the form indicate "*she says* she has fibromyalgia" (emphasis added), although he then also listed it as a diagnosis.  Tr. 724.  Her gastroenterologist indicated in March 2022 that she "also complains of fibromyalgia," and review of the record shows this impairment listed generally throughout the record as a diagnosis or under past medical history.  *See, e.g.*, Tr. 523, 724, 731.  Additionally, the medical expert explained Plaintiff's fatigue was a symptom, most likely of a combination of both anemia and fibromyalgia, although he also opined "more likely than not it [is] most likely related to the anemia."  Tr. 56.  The ALJ found the medical expert's testimony persuasive, as discussed *supra*, and the ALJ also concluded the assessed RFC gave Plaintiff the benefit of the doubt regarding her symptoms resulting from her impairments including fibromyalgia.  Tr. 35.  On this record, the ALJ's findings are reasonable.

The Court must also consider the ALJ's decision in the context of the "entire record as a whole," but if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted).  Further, where the ALJ's interpretation of the record is reasonable, as it is here, it should not be second-guessed.  *Rollins*, 261 F.3d at 857.  The ALJ reasonably concluded that the medical evidence, including the objective medical evidence, did not support the level of impairment alleged by Plaintiff.  This was a clear and convincing reason, when combined with the other reasons offered, to discount Plaintiff's symptom reports.

*2. Activities*

The ALJ found Plaintiff's daily activities were inconsistent with her allegations.  Tr. 31.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a).  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.

Here, the ALJ found Plaintiff's daily activities were inconsistent with her allegations of disabling symptoms.  Tr. 31.  The ALJ noted Plaintiff could attend to personal hygiene, prepared complete meals, and could clean, shop, and pay bills. Tr. 31 (citing Tr. 356-63).  The ALJ noted Plaintiff also attended church and socialized via video chat and text.  *Id*.  The ALJ noted Plaintiff's report in June 2020 that she could do household chores, play games, visit with others, and play fetch with her dog.  *Id*. (citing Tr. 461).  The ALJ noted her report at the hearing that she stopped working because she was laid off, and that right hand pain and numbness were her major symptoms that prevented work.  *Id*.  The ALJ noted her testimony that she "sometimes rested for an hour or two at a time due to fibromyalgia symptoms, such as fatigue," and that she wore a brace on her right hand during the day.  *Id*.

On this record, the ALJ reasonably discounted Plaintiff's symptoms based on her daily activities, and this was a clear and convincing reason to discount her symptom complaints.

ORDER GRANTING DEFENDANT'S MOTION . . . - 17

*3. Improvement with Treatment*

The ALJ found the record showed Plaintiff had improvement with treatment. Tr. 32. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Here, the ALJ noted records showed Plaintiff started taking an oral iron supplement in the summer of 2019, and "her symptoms improved since she started taking this supplement." Tr. 32 (citing Tr. 435, 449, 453). Records from October 2019 show normal iron, and her gastroenterologist noted lab results at that time showed her "hemoglobin was normal at 13.6 which is almost double what it was the last time we saw her." Tr. 434-35. In 2022 her provider noted her history of severe anemia in 2019 with hemoglobin of 6.5-7; he noted she started treatment with iron pills, then liquid supplements, and "since that time her hemoglobin has been above 13 with normal iron and ferritin." Tr. 729. Records show more fiber and a special diet were recommended throughout the period at issue for her gastrointestinal issues; and in October 2020 she reported "some bloating and fluctuation bowel habits . . . though denies frequent diarrhea or severe constipation." Tr. 546. She was also noted to be "somewhat compliant with . . . diet but not completely." *Id*. She was noted to be compliant with her liquid iron, her last hemoglobin was noted to be normal; her provider noted she took Prilosec every morning as well as "dicyclomine daily for cramping," and that she was "symptom free re dyspepsia." *Id*. Physical exam was normal except she was "mildly tender to epigastric and left-sided abdominal pain," and nursing notes showed her report she was "still tired but feels she is doing better." Tr. 550, 552. Records from 2021 show she reported her primary complaint was thumb pain and she was treated with a custom splint. Tr. 643. While records show history of

heavy bleeding, which the medical expert noted could exacerbate her symptoms including fatigue, records from 2019, 2021 and 2022 show generally normal menstrual cycles with OCP treatment.  Tr. 523, 529, 712, 714-15.

The ALJ reasonably discounted Plaintiff's symptom complaints because she improved with treatment, and this was a clear and convincing reason supported by substantial evidence to discount Plaintiff's symptom reports.

Plaintiff is not entitled to remand on this issue.

**C.    Step-Three**

Plaintiff contends the ALJ also failed to conduct an adequate step-three analysis.  ECF No. 10 at 12-16.

At step three of the sequential evaluation process, the ALJ considers whether one or more of the claimant's impairments meets or equals an impairment listed in Appendix 1 to Subpart P of the regulations.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  Each listing sets forth the "symptoms, signs, and laboratory findings" which must be established for a claimant's impairment to meet the Listing.  *Tackett*, 180 F.3d at 1099.  If a claimant meets or equals a listing, the claimant is considered disabled without further inquiry.  20 C.F.R. §§ 404.1520(d), 416.920(d).  The listings "describes for each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience."  20 C.F.R. § 416.925.  "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'"  *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered."  *Kennedy,* 738 F.3d at 1176.  If a claimant meets the listed criteria for disability, she will be found to be disabled.  20 C.F.R. § 416.920(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett,* 180 F.3d at 1099 (emphasis in original); 20 C.F.R. §§ 404.1525(d), 416.925(d). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a). "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Id*. However, "[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three." *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).

The claimant bears the burden of establishing her impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch*, 400 F.3d at 683. Additionally, "[a]n adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide [a] rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." Social Security Ruling (SSR) 17-2p, 2017 WL 3928306, at *4 (effective March 27, 2017).

Here, the ALJ found that Plaintiff's impairments and combination of impairments did not meet or medically equal the criteria of listings 1.18, 5.06, 7.05, 11.14, 14.09, 12.04 and 12.06. Tr. 27-28. Plaintiff contends the ALJ failed to conduct an adequate step-three analysis, failed to adequately consider listing 14.09D in accordance with Plaintiff's fibromyalgia, and failed to find Plaintiff disabled as meeting or equaling a listing. ECF No. 10 at 12-16. However, the step

ORDER GRANTING DEFENDANT'S MOTION . . . - 20

three findings by the ALJ must be read in conjunction with the entire ALJ decision. SSR 17-2P, 2017 WL 3928306, at *4. Here, the ALJ's analysis in its entirety as to Plaintiff's impairments permits the Court to meaningfully review the ALJ's finding that Plaintiff's impairments did not meet or equal the criteria of any listed impairment. The ALJ adequately considered Plaintiff's impairments at step three, including Fibromyalgia, and relied on the testimony of the medical expert, Dr. Dhiman, discussed *supra*, who testified based on his review of the record as a whole that Plaintiff did not meet or equal any listing. Tr. 55. While Plaintiff contends the ALJ erred at step three by failing to properly consider whether Plaintiff met or equaled a listing based on her reports of symptoms and Dr. Cwik's opinion as to her limitations, ECF No. 10 at 15-16, as discussed *supra*, the ALJ reasonably found Dr. Dhiman's opinion more persuasive than Dr. Cwik's opinion and provided sufficient reasoning to discount Plaintiff's symptom reports.

The ALJ's determination that Plaintiff's impairments did not meet or equal a listed impairment at step three is supported by substantial evidence.

**D.    Step-Five**

Plaintiff contends the ALJ also failed to meet her burden at step-five. ECF No. 10 at 20. At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work, and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran*, 700 F.3d at 389. In assessing whether there is work available, the ALJ must rely on complete hypotheticals posed to a vocational expert. *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. The hypothetical that ultimately serves as the basis for the ALJ's determination, *i.e.*, the

hypothetical that is predicated on the ALJ's final RFC assessment, must account for all the limitations and restrictions of the claimant. *Bray*, 554 F.3d at 1228.

The ALJ's RFC need only include those limitations found credible and supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211,1217 (9th Cir. 2005) ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record."). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id*. However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). Therefore, the ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel if they are not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). A Plaintiff fails to establish that a step five determination is flawed by simply restating an argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Plaintiff contends the ALJ erred by relying on the vocational expert's response to an incomplete hypothetical. ECF No. 10 at 20. However, Plaintiff's argument assumes that the ALJ erred in his analysis of the medical opinion and other evidence. As addressed *supra*, the ALJ properly assessed the medical opinion evidence and properly discounted Plaintiff's symptom claims. The ALJ has the discretion to evaluate and weigh the evidence and the Plaintiff's alternative interpretation of the evidence does not undermine the ALJ's analysis. The ALJ did not err in assessing the RFC or finding Plaintiff capable of performing work

existing in the national economy, and the RFC adequately addresses the medical opinions in this record.

Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error and is affirmed.  Accordingly, **IT IS HEREBY ORDERED:**

1.     Defendant's Motion to affirm, **ECF No. 14**, is **GRANTED**.

2.     Plaintiff's Motion to reverse, **ECF No. 10**, is **DENIED**.

The District Court Executive is directed to update the docket sheet to reflect the substitution of Martin O'Malley as Defendant and file this Order and provide copies to counsel.  **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED March 18, 2024.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE